POINT *vs.* THE STATE.

[INDICTMENT FOR LARCENY IN DWELLING-HOUSE.]

1. *Variance in name of owner of stolen goods.*—Where the indictment alleged the stolen goods to be the property of *Juli* Antoine, while the proof showed that they belonged to a Frenchman, whose name was *Juli* Antoine in French, and who was "generally called as if his name was spelled *Julee* Antoine,"—*held*, that there was no variance or mis-nomer.

2. *What constitutes larceny in dwelling-house.*—Under section 3170 of the Code, unlike the penal code of 1841, (Clay's Digest, 425, § 55,) a per-son may be convicted of larceny in a dwelling-house, although he was in the house, at the time of the theft, by the invitation of the owner.

FROM the City Court of Mobile.

Tried before the Hon. HENRY CHAMBERLAIN.

THE indictment in this case charged, that the prisoner, John Point, "feloniously took and carried away from a dwelling-house a coat, of the value of ten dollars, and a pair of pantaloons, of the value of five dollars, the personal property of Juli Antoine." The evidence adduced on the trial, and the charges of the court to the jury, are thus stated in the bill of exceptions :

"The State introduced a witness, who testified as follows : 'In October, 1860, about a week before the finding of the indictment in this case, the prisoner came to him, with a cloth coat, a pair of military pantaloons, and a military coat, (the two last being identical with those of the first sergeant of the 'Guards LaFayette,' a volunteer military company in the city of Mobile, of which company witness was then the first lieutenant,) and wanted to sell them to him, and told him that they had been given to him by a Mr. Clebert, of New Orleans. Witness told him, that he did not wish to buy them; and the prisoner then appealed to him, as a favor, to advance him ten dollars on the goods, and take and sell them for him. Witness gave the prisoner the money, and took the goods to sell; but, after the pris-oner left, he went to the first sergeant of said company,

and brought him to his store ; and said sergeant identified and claimed said goods as his own. Said sergeant's name is Juli Antoine, as spelled in the French language ; he is a Frenchman by birth, and so is witness ; he is generally called as if his name was spelled Julee Antoine, but is called in French Juli Antoine, as pronounced in the French language.' The State then introduced Juli Antoine as a witness, who testified, that the prisoner came to him, a short time before the finding of the indictment, said that he was a stranger in Mobile, without the means to provide a home, and asked his hospitality; that he told the prisoner, he would give or afford him a lodging, if he would occupy the same bed with himself in the house where he lodged; that the prisoner consented to do this, and slept with him that night, (which was Thursday,) and the three following nights ; that the said stolen goods were in his trunk, in his said bed-room ; that they were in his trunk on Sunday, and he missed them the next day ; that he found them at the store of the witness Fitchell, and was positive as to their identity, and also as to the identity of the prisoner ; that the cloth coat was worth about four dollars, the military coat about ten dollars, and the pantaloons about five dollars; that the military clothes were a part of his sergeant's uniform; and that he occupied and slept in said room, and had done so for several years. Another witness corroborated the above testimony.

"The court charged the jury, among other things, 'that there was no misnomer or variance in Antoine's christian name—that it could be spelled Julee as well as Juli.' The prisoner excepted to this charge, and requested the court to instruct the jury as follows : 'If the jury believe that the prisoner, by the permission of Juli Antoine, occupied the same room for three days, and, at the time said occupancy commenced, had formed no intention to commit any offense, and that the goods were stolen by him during such occupancy,—then he would not be guilty as charged in the indictment, but would be guilty of petit larceny.' The court refused to give this charge, and the prisoner excepted."

STONE, J.—We are not able to perceive any misnomer in the present case. The pronunciation of the two names is substantially the same, and we think the doctrine of *idem sonans* must be held to apply.—*Petrie v. Woodworth*, 3 Caines' Rep. 219; *Aaron v. The State*, at the present term; Whar. Am. Cr. Law, § 258, and authorities cited.

[2.] The question, whether or not the alleged larceny was committed in a dwelling-house, is not presented by the present record. We are not informed that the bill of exceptions contains all the evidence; and that which is set out tends to prove, that the present building was applied to some of the uses to which dwelling-houses are applied. Whether a room, occupied only as a sleeping apartment, is a "dwelling-house," within section 3170 of the Code, we need not inquire, as that question is not presented by the record before us.

Section 3170 of the Code is a clear departure from our old statute, which was construed in *Chambers'* case, 6 Ala. 855. Its language is, "any person, who commits larceny in any dwelling-house, store-house," &c.—Code, § 3170. Under this statute, it is manifest that a person, who is in a dwelling-house by invitation, may therein commit the offense which it was designed to punish. The provisions of this section are very much like those of 12 Anne, (2 East's Cr. Law, 644,) under which it was ruled, that "the property stolen must be such as is usually under the protection of the house." This clearly indicates what the legislature deemed the aggravating feature of the statute. It is not the fact that a dwelling-house is broken or entered, which constitutes the statutory crime. The sanctity which the place throws over property which is under its protection, magnifies the offense, and constitutes it a felony, irrespective of the value of the property stolen.—2 East's Cr. Law, 644–5; *Rex v. Taylor*, 1 Russ. & Ry. 417.

The charge asked was properly refused, and the judgment of the city court is affirmed.